724 F.Supp. 1064 (1989)
Deborah ARSENAULT, Plaintiff,
v.
Richard BELL, Mary Rahilly, and G.A.N.E., Inc., Defendants.
Civ. A. No. 88-0120-F.
United States District Court, D. Massachusetts.
November 9, 1989.
Brian D. Banks, Robert Christo & Associates, Springfield, Mass., for plaintiff.
Keith A. Minoff, Robinson, Donovan, Springfield, Mass., for Richard Bell and Mary Rahilly.

MEMORANDUM AND ORDER
FREEDMAN, Chief Judge.

I. INTRODUCTION
This case arises under the Employee Retirement Security Act of 1974 (hereinafter "ERISA" or "the Act"). Plaintiff Deborah Arsenault is a participant in an employee benefit plan. She has filed an amended complaint which argues that the civil enforcement provisions of ERISA contained in 29 U.S.C. § 1132(a)(1)(A) empower her to *1065 bring a civil action against the defendants, and that the defendants are personally liable to her for fines and other relief pursuant to the statutory penalty provisions of 29 U.S.C. § 1132(c).
Defendants Richard Bell and Mary Rahilly reply that the plaintiff has raised no issue of material fact, and they have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant G.A.N.E., Inc. has not responded to the plaintiff's complaint, and notice of default by G.A.N.E., Inc. was entered by this Court on January 5, 1989.

II. FACTS
The plaintiff alleges that G.A.N.E., Inc. is the insurance corporation which administered the group benefit plan of which she was a participant, and that defendants Bell and Rahilly were administrators of the insurance plan.[1] The plaintiff claims that she lost hearing in her right ear because the defendants failed to provide her with the health insurance claim forms she needed in order to obtain medical care in June and July 1985. She further alleges that the defendants' failure to send her the insurance claim forms constitutes a breach of their duty to supply information, as required by 29 U.S.C. § 1132(c). This subsection provides that a benefit plan administrator who fails to provide information to a plan participant may be personally liable for fines of up to $100 per day.
The plaintiff does not allege that the plan has failed to pay for any medical care that she is entitled to under the plan. There is nothing in the pleadings to indicate that the plaintiff attempted to use section 1132(a) to enforce her rights under the plan at the time she was in need of the medical benefits in 1985. She claims only a violation of the administrator's duty to supply information pursuant to section 1132(c).

III. DISCUSSION
One purpose of ERISA, and the main focus of Title I of the Act, is to protect the participants of employee benefit plans by imposing disclosure requirements and standards of conduct on plan fiduciaries. 29 U.S.C. § 1001(b); see Comment, Exceptions to the Anti-Alienation Provision: Strengthening ERISA's Protection Through a Fraud Amendment, 10 W.New Eng.L.Rev. 317, 317-325 (1988) (regulations imposed on plan fiduciaries by Title I were enacted to protect against mismanagement and abuse of plan funds). These reporting and disclosure requirements were enacted as section 502(c) of ERISA, Pub.L. 93-406, 88 Stat. 891-92, reprinted in 1974 U.S. Code Cong. & Admin.News 935, 1012, and are now codified at 29 U.S.C. § 1132(c).

A. The Reporting and Disclosure Requirements of Section 1132(c)
The plaintiff's claim is based on an improper reading of section 1132(c) (hereinafter "section (c)").
The plaintiff is asking this Court to find the defendants in violation of subsection (c), and to assess fines and attorneys' fees against the defendants for failing to supply the claim forms. Subsection (c) states, in pertinent part, that:
Any administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary ... within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.
29 U.S.C. § 1132(c). The thrust of plaintiff's complaint is that claim forms are among the information which subsection (c) requires a plan administrator to furnish under Title I. As support for her argument, the plaintiff points to 29 U.S.C. §§ 1024 and 1025, which require benefit plan administrators to provide participants and beneficiaries with copies of the plan's annual report, a statement of their rights *1066 under the plan, and a statement of benefits accrued. However, there is no mention of claim forms in either section or anywhere else in Title I.
The legislative history accompanying the original Act also indicates that Congress did not intend that claim forms be among the materials contemplated under subsection (c). The reporting and disclosure provisions of Title I were intended specifically to insure that plan participants are able to obtain financial information about the plan, as well as information about the benefits which they are eligible to receive. The drafters of ERISA recognized:
a need for a more particularized form of reporting so that the individual participant knows exactly where he stands with respect to the plan  what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted.... [T]he safeguarding effect of the fiduciary responsibility section[[2]] will operate efficiently only if fiduciaries are aware that the details of their dealings will be open to inspection, and that individual participants and beneficiaries will be armed with enough information to enforce their own rights as well as the obligations owed by the fiduciary to the plan in general.
House Committee on Education and Labor, Employee Retirement Income Security Act of 1974, H.R.Rep. No. 533, 93d Cong., 2d Sess. 11 (1973), reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4649. Thus, the legislative history underlying subsection (c) expresses a Congressional intent to guarantee that plan participants have access to the information they need to protect their interests in the assets and funds being managed by the plan fiduciaries. Recent amendments to subsection (c) also express the intent that plan participants be kept informed of their eligibility for benefits. However, there is nothing in the legislative history to indicate that the reporting and disclosure provisions embodied in subsection (c) were intended to address the ministerial function of supplying claim forms to individual plan participants.
The ERISA reporting and disclosure regulations prepared by the Secretary of Labor also reflect this legislative intent to insure that plan participants are supplied with information about how plan funds are being handled.[3] The specific regulations discussing what information and documents must be provided to plan participants are set out at 29 C.F.R. § 2520.104-1 through .104-50 and at 29 C.F.R. § 2520.104b-1 through .104b-12. These regulations set guidelines for plan administrators who are required to prepare and distribute annual reports and other documents which inform plan participants of their rights under the plan, explain how the plan operates, and disclose the plan's fiscal health. There is nothing in the disclosure regulations involving claim forms. Additionally, the regulations distinguish the duties of a plan fiduciary from the benefit plan employees who process claims. In a discussion of who is a fiduciary, the regulations state that "[o]nly those persons who perform one or more of the [fiduciary] functions described in section 3(21)(A) of the Act [29 U.S.C. § 1002(21)(A)] ... are fiduciaries," and that persons involved in the processing of claims are not considered fiduciaries. 20 C.F.R. § 2509.75-8.
Therefore, the plaintiff has no cause of action in the instant case, since claim forms are not among the materials covered by subsection (c). A plan participant may not invoke subsection (c) to collect penalties from an administrator who fails to supply the forms. Accord Clouatre v. Lockwood, 593 F.Supp. 1136, 1140 (M.D.La.1984) (plaintiff's "request for benefits does not satisfy the request element that is needed to state a claim upon which relief can be granted under" subsection (c)); Wesley v. Monsanto Co., 554 F.Supp. 93, 98 (E.D.Mo. *1067 1982) ("claim forms are not among the documents specified in the statute").
However, the plaintiff's allegations that she was unable to obtain the forms needed to initiate her health care claim do indicate that the plan was not being carried out in compliance with ERISA's minimum standards regarding claim procedures, and denial of claims, 29 U.S.C. § 1133.[4] The Department of Labor regulations require a plan administrator to establish claim procedures which do not inhibit or hamper "the initiation or processing of plan claims." 20 C.F.R. § 2560.503-1(b)(1)(iii). A plan's failure to provide an adequate claim procedure may give rise to a private cause of action against plan administrators under 29 U.S.C. § 1132(a)(3). It is this civil remedy which the Court will now discuss.

B. Civil Enforcement Under Section 1132(a)
Title 29, United States Code, Section 1132(a) (hereinafter "subsection (a)") contains the civil enforcement scheme which Congress provided to accomplish the purposes of ERISA, and was intended to meet "the need for prompt and fair claim settlement procedures." Pilot Life Insurance v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 1554-57, 95 L.Ed.2d 39 (1987). Under subsection (a), a civil action may be brought by a plan participant:
(1) ....
(A) for relief provided for in subsection (c) of this section,[[5]] or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan....
....
(3) ... (A) to enjoin any act or practice which violates any provisions of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.
29 U.S.C. § 1132(a)(1), (3). As analyzed by the Supreme Court, a plan participant's relief under subsection (a):
may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits. A participant or beneficiary may also bring a cause of action for breach of fiduciary duty, and under this cause of action may seek removal of the fiduciary [pursuant to sections 1132(a) and 1109]. In an action under these civil enforcement provisions, the court in its discretion may allow an award of attorney's fees.
Pilot Life Insurance Co. v. Dedeaux, 481 U.S. at 53, 107 S.Ct. at 1556. Thus, the provisions of subsection (a) allow for recovery of benefits owing to the plaintiff under her contract. However, there is no basis for the plaintiff's argument that a delay in supplying or processing health claim forms can lead to an extracontractual personal injury recovery under ERISA. When asked whether a plan participant could sue for a personal injury pursuant to subsection (a) and the fiduciary duty provisions of 29 U.S.C. § 1109,[6] the Supreme Court concluded that: *1068 the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan [section 1132(a)(1)(B)] ... says nothing about the recovery of extracontractual damages, or about the possible consequences of delay in the plan administrators' processing of a disputed claim. Thus, there really is nothing at all in the statutory text to support the conclusion that such a delay gives rise to a private right of action for compensatory or punitive relief.
Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985). Any questions as to whether the fiduciary duty provisions contained in 29 U.S.C. § 1109 allowed participants to recover extracontractual damages were answered in the negative by the Supreme Court's Russell decision. See Note, Punitive Damages and ERISA: An anomalous Effect of ERISA's Preemption of Common Law Actions, 65 Wash.U.L.Q. 589, 593-99 (1987) (explaining how Russell resolved a conflict among the circuits over private causes of action allowable under section 1109).
In applying section 1109 to the facts in Russell,[7] the Supreme Court "expressly reserved the question of whether any other section of ERISA provided punitive or extracontractual damages." Id. at 597; Russell, 473 U.S. at 139 n. 3, 105 S.Ct. at 3088 n. 3. However, Russell is instructive in that a careful examination of the statutory structure and legislative history of section (a)(1)(B) led the Supreme Court to conclude that there could be no judicially implied cause of action for "extracontractual damages caused by improper or untimely processing of benefit claims." Russell, 473 U.S. at 148, 105 S.Ct. at 3093. These same considerations of statutory structure and legislative history lead this Court to conclude that there can be no judicially implied cause of action for failure to supply claim forms under subsections (a)(1)(A) and (c), and that the penalty provisions of subsection (c) were not intended to remedy extracontractual damages such as the plaintiff's alleged hearing loss.
The plaintiff may be able to sue the plan administrator on the theory that failure to provide claim forms was a violation of the administrator's obligation under 29 U.S.C. § 1133 to establish a reasonable claim procedure.[8] The plaintiff may invoke section 1132(a)(3) to compel the plan administrators to establish claim procedures which comply with the ERISA regulations promulgated by the Secretary of Labor. Had the plan improperly denied her claim, or refused to process it, the plaintiff might also have a cause of action to recover benefits due her under the plan, pursuant to section 1132(a)(1)(B).

*1069 IV. CONCLUSION
Claim forms were not contemplated by Congress as among the materials which a plan administrator is required to furnish under section 1132(c). Therefore, the plaintiff has failed to state a claim upon which relief can be granted.
Accordingly, defendants' motion for summary judgment is GRANTED. Plaintiff's amended complaint and demand for jury trial is DISMISSED.
It is So Ordered.
NOTES
[1] The Act does regulate the plan operated by the defendants, since ERISA's coverage includes employee benefit plans which provide health care benefits. 28 U.S.C. § 1002(1)(A).
[2] See discussion and text of 29 U.S.C. § 1109 in note 6, infra, and accompanying text.
[3] Congress authorized the Secretary of Labor to promulgate regulations for compliance with ERISA. 29 U.S.C. § 1031(c), 29 U.S.C. § 1135.
[4] 29 U.S.C. § 1133 provides as follows:

In accordance with regulations of the Secretary, every employee benefit plan shall
(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.
Id.
[5] As discussed in Section III A, supra, subsection (c) requires disclosure of information and documents by plan administrators, but this Court concludes that subsection (c) does not apply to claim forms, and plaintiff therefore has no cause of action under this subsection.
[6] The fiduciary duty provisions of ERISA contained in 29 U.S.C. § 1109 provide that:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary....
Id.
[7] The facts in Russell are analogous to the facts presented by the plaintiff in the instant case. Doris Russell, a plan beneficiary, alleged that interruption of her disability benefits "aggravated the psychological condition that caused [her] back ailment." Russell, 473 U.S. at 137, 105 S.Ct. at 3087. Although the plan eventually paid all the benefits to which Mrs. Russell was contractually entitled, id. at 136, 105 S.Ct. at 3087, she sued the plan fiduciaries on the theory that they violated their fiduciary duty under 29 U.S.C. § 1109 to properly administer the plan by interrupting her benefits. Mrs. Russell argued that section 1109, which was enacted as section 409 under the original Act, enabled her to collect equitable or remedial relief for her back injury. Id. at 138, 105 S.Ct. at 3088.

However, the Supreme Court rejected Mrs. Russell's argument, thus overturning the Ninth Circuit Court of Appeals, which had held that section 1109 allowed plan participants to sue plan administrators for "relief that will compensate the injured party for all losses and injuries sustained as a direct and proximate cause of breach of the fiduciary duty." Russell v. Massachusetts Mutual Life Insurance Co., 722 F.2d 482, 490 (9th Cir.1983). In reversing the Ninth Circuit, the Supreme Court held that there can be no extracontractual recovery, and that any recovery of damages under section 1109 could only be made on behalf of the plan. Russell, 473 U.S. at 144, 105 S.Ct. at 3091.
[8] See footnote 4 and accompanying text, discussing section 1133 and ERISA regulations concerning benefit plan claim procedures.